**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

**STACEY LYNN REICHLER,**

    **Plaintiff,**

v.                                                                              Case No. 1:21-CV-70637

**THE TOWN OF ABINGDON**,                             **JURY TRIAL DEMAND**

**Serve:**
    **Mayor Derek Webb
    390 Oakmont Street
    Abingdon, Virginia 24211**

    **Mayor Derek Webb
    133 West Main Street
    Abingdon, VA 24210**

    **Defendant.**

**FIRST AMENDED COMPLAINT**

COMES NOW, Plaintiff Stacey Lynn Reichler ("Ms. Reichler" or "Plaintiff"), by counsel, and states as her First Amended Complaint against Defendant, the Town of Abingdon ("the Town" or "Defendant"), the following:

**I. JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and as codified under 42 U.S.C. §§ 2000e *et seq*. ("Title VII"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. §1343(a)(4).

2.    Due to its contacts within the Commonwealth of Virginia, Defendant avails itself of the jurisdiction of this Court.

3.    Plaintiff timely filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") on or around June 11, 2020. Plaintiff received a Dismissal and Notice of Rights ("NORTS") from the EEOC dated January 6, 2021, attached hereto as **EXHIBIT A**. Plaintiff later received a Recission of Notice of Right to Sue, attached hereto as **EXHIBIT B**. The EEOC referred Plaintiff's Charge of Discrimination to the United States Department of Justice ("DOJ") for issuance of a Notice of Right to Sue. The DOJ issued a Dismissal and Notice of Right to Sue on November 17, 2021, attached hereto as **EXHIBIT C.**

4. Plaintiff initially filed her Complaint in the Circuit Court for the City of Roanoke within ninety days of the EEOC's initial NORTS, as that court had concurrent jurisdiction with the United States District Court for the Western District of Virginia. This was done out of an abundance of caution due to the EEOC's confusion over whether it had jurisdiction to issue the NORTS.

## II. THE PARTIES

5. Plaintiff, at all times relevant to this Complaint, resided in Abingdon and was an "employee" of the Town of Abingdon.

6. The Town of Abingdon in Washington County, Virginia governs itself through a Council elected by the citizenry. The Council appoints a Town Manager to supervise and manage town personnel.

7. At all times relevant to this Complaint, the Town of Abingdon is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(a), an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(b), and engaged in an industry affecting commerce which had 15 or more employees for each working day in each of twenty or more calendar weeks during the year of Plaintiff's termination, or the preceding calendar year.

## III. FACTUAL ALLEGATIONS

8. Ms. Reichler was hired by the Town of Abingdon on or around June 8, 2015, as the Director of Human Resources.

9. At the time of her hire, she earned $63,000 per year with benefits and earned $74,267 per year with benefits at the time of her termination on February 21, 2020.

10. During her tenure, Ms. Reichler performed her job duties with expertise and met legitimate workplace expectations.

11. At all times relevant, Ms. Reichler identified her gender as female.

**Morani Becomes Town Manager & Immediately Targets Reichler**

12. On or about May 6, 2019, James Morani was appointed as the Town Manager for Abingdon.

13. Mr. Morani came to the Town of Abingdon with more than 12 years of experience in local government management and had been involved in hiring city department heads. Such experience provided Mr. Morani with a basic understanding of federal employment law in so far as he knew it was unlawful to discriminate on the basis of sex.

14. On or about October 2019, Ms. Reichler requested tuition reimbursement for her doctorate program in human resources.

15. Upon information and belief, the Town was paying tuition reimbursement for male Town police officers on similar terms. Even so, Mr. Morani informed Ms. Reichler that the Town had no policy for tuition reimbursement.

16. Also, in October 2019, Ms. Reichler borrowed a Town vehicle to visit another Town employee at the hospital. Ms. Reichler's own car was in the shop. The next

3

day, on October 17, 2019, Mr. Morani told Ms. Reichler she could not use Town vehicles and that "it looks bad if you use the Town vehicle." Upon information and belief, male Town employees use Town vehicles to go home for lunch, pick up food, and/or take care of other personal errands without question.

17. In November 2019, Ms. Reichler requested time off to attend her son's graduation from Basic Officer Leadership Course (BOLC) in Fort Sill, Oklahoma. Ms. Reichler offered to work three 12-hour days to make up her time and inserted that information into the comments section of her time off request. Mr. Morani initially approved this request for time off; however, he became incensed when Ms. Reichler did not attend the event due to an injury sustained by her son. Ms. Reichler notified Mr. Morani of the situation as soon as she received information regarding the same.

18. Shortly thereafter, Mr. Morani began digging into Ms. Reichler's personal life and monitoring her social media.

19. Mr. Morani then installed a camera and microphone approximately three (3) feet from Ms. Reichler's office door for no other reason but to spy on Ms. Reichler. Ms. Reichler was very uncomfortable with this unnecessary surveillance.

20. Notably, the audio and video devices observed/recorded all employees who entered Ms. Reichler's office but also were close enough to listen to conversations that should have remained confidential due to Ms. Reichler's human resources function. The equipment was close enough that the conversations could be heard even with the door closed.

**Reichler Demoted | Pattern of Female Dept. Head Demotions Follows**

21. On January 9, 2020, Ms. Reichler was inexplicably and unfairly demoted from her position as a Department Head and placed under a division of the Town

4

Manager. Ms. Reichler's job duties were reduced, she was no longer permitted autonomy over her department budget, nor was she permitted access to make requests regarding budgetary items.

22. Ms. Reichler had performed her duties well and had met all legitimate workplace expectations. She had not been disciplined, nor had she received any poor work performance reviews or a performance improvement plan.

23. Ms. Reichler received no explanation for her abrupt and unfair demotion/adverse employment action.

24. Notably, three other female Town employee Department Heads were demoted and/or terminated at or around this same time. Sarita Moore, Director of Wastewater and a 20-year Town employee, was demoted on or about December 3, 2019, by Mr. Morani in a humiliating public display in a Public Works Meeting filled only with other male employees. Tonya Triplett, Community Development Coordinator, was demoted on or about the week of January 9, 2020, as well. Jayne Duehring, the Director of Tourism, was also terminated from employment in 2020.

25. Ms. Reichler, as Director of Human Resources, was particularly well positioned to know about the work performance of these three female employees and, it appeared they were meeting all legitimate workplace expectations and had received no discipline, poor work performance reviews, or performance improvement plans.

### Reichler is Berated, Harassed, & Humiliated by Morani

26. On or about January 17, 2020, Ms. Reichler was summoned to a meeting with Mr. Morani.

27. Prior to this meeting, Ms. Reichler consistently maintained excellent work performance and received only positive work performance evaluations.

28. During this meeting, Mr. Morani berated Ms. Reichler about her spending on previous business trips, most recently to New Orleans, and her time off request regarding her son's graduation from BOLC in December. Mr. Morani stated that he never saw the comments in her time off request even though he approved her time off.

29. Mr. Morani called Ms. Reichler a "liar," and stated: "nobody likes you, nobody trusts you, and I have serious trust issues with you!"

30. Mr. Morani also told Ms. Reichler "you don't know how to budget, and you're incompetent. You need to start eating fast food."

31. Mr. Morani continued this harassing and demeaning behavior towards Ms. Reichler with rapid fire questions and stated, "even Mr. Vittum [the former Town Manager] didn't trust you."

32. Due to Mr. Morani's behavior, Ms. Reichler was also made to feel like she needed to repay the Town for the meals and plane ticket for her work-related trip to New Orleans, which was completely inappropriate as her meals and travel costs were legitimate costs.

33. As the result of Mr. Morani's accusations and behavior toward her, she paid the Town $808.16 on January 22, 2020, even though she was within the Town's policy regarding travel and meals.

34. Upon information and belief, no other employee was required to pay the Town back for work-related meals and travel costs.

35. Ms. Reichler ultimately received written disciplinary memorandums from Mr. Morani during the January 17, 2020 meeting.

36. The written disciplinary memorandums were unfounded.

37. Ms. Reichler submitted written rebuttal memorandums to Mr. Morani in

response to his accusations in the January 17, 2020 meeting.

38. Thereafter, Mr. Morani told Ms. Reichler, "I didn't read those comments," in reference to her approved time off request to visit her son and began requiring that Ms. Reichler submit her future requests for time off to him by email. Upon information and belief, no other employee was required to request time off in this manner.

39. On or around February 12, 2020, during a department budget meeting which included Kim Kingsley, Town Clerk, Mr. Morani again berated Ms. Reichler by questioning her ability to budget.

40. Mr. Morani then began waving an accordion file folder in Ms. Reichler's face, and laughing, stating, "Oh I know you're going to want to respond to this." The folder he was waving in her face contained an unwarranted written warning for breach of policy/procedure and inferior performance, which he presented to Ms. Reichler in front of her colleagues.

41. Mr. Morani's actions were unprofessional and inappropriate, a breach of confidentiality concerning personnel matters, and a clear attempt to humiliate Ms. Reichler in front of her peers.

**Morani Pattern & Practice of Targeting & Harassing Female Employees**

42. Indeed, Mr. Morani illustrated a pattern and practice of targeting and harassing female Town employees.

43. For example, Ms. Reichler witnessed Mr. Morani telling Jayne Duehring, the Director of Tourism, "Shut up, that's a stupid idea. I'm moving on to my next point", on or about January 23, 2020, at a staff meeting and in front of numerous colleagues.

44. Mr. Morani did not speak in such a disrespectful or aggressive manner to male Town employees.

7

45. On or around January 9, 2020, Mr. Morani stated to two of the female Department Heads, Ms. Reichler and Ms. Triplett: "You all [upon information and belief, referring to female employees] are going to have to get used to not being treated the same. I need to focus on retaining employees who matter – IT and the Police [most, notably, who are male]."

46. Mr. Morani also regularly stated in condescending tones to female staff and even female council members: "I know how to *handle* you." Upon information and belief, Mr. Morani did not speak to male employees in such a manner.

47. Ms. Reichler and other female employees regularly were called and/or overheard Mr. Morani call women and female employees "busy bodies, bossy, catty, liars" and other degrading terms. He specifically stated in the workplace, "I don't like working with women because they're catty."

### Reichler Receives Complaint Regarding Morani from Colleague | Bossy is the New "B" Word

48. On February 13, 2020, Sara Saavedra, Special Events Coordinator of the Town, requested a meeting with Ms. Reichler concerning Mr. Morani's unprofessional, sexist, and demeaning behavior towards Ms. Saavedra.

49. Specifically, Mr. Morani made a practice of repeatedly interrupting and talking over Ms. Saavedra during meetings.

50. In one particular meeting in February of 2020, when Ms. Saavedra stated to Mr. Morani, "we need to get this meeting back on track," Mr. Morani responded with, "Man, you're really bossy."[1]

---

[1] *See* https://www.wnycstudios.org/podcasts/takeaway/segments/bossy-new-b-word (detailing Sheryl Sandberg's Ban Bossy Project, in conjunction with the Girl Scouts of America and other high profile women leaders like Condoleeza Rice, Diane von Furstenberg and Jane Lynch. "Bossy is one of the many ways we discourage little girls from leading," Sandberg told NPR's All Things Considered. "When a little

8

51. Ms. Saavedra was then unable to regain control of the meeting and no one listened to her.

52. In February of 2020, Department Head Duehring, and another one of Ms. Reichler's peer female employees requested of Ms. Reichler: "you need to do something about Morani and how unprofessional he is against women. He just shoots off at the mouth without any thought or care."

53. As a result, Ms. Reichler, acting in her capacity as a member of the Human Resources team, contacted Town Attorney Cameron Bell to make a complaint of gender harassment and discrimination on behalf of Ms. Saavedra and others, including herself. Ms. Reichler reports specific incidences of harassment by Mr. Morani which had been communicated to her by other female employees. Ms. Reichler also reported that she, herself, had suffered harassment and discrimination by Mr. Morani. Mr. Bell advised Ms. Reichler that he would have to get back with her.

54. Shortly thereafter, on or around February 14, 2020, Ms. Reichler was contacted by Town Attorney Ramesh Murthy to schedule a meeting. Accordingly, on or about February 18, 2020, Ms. Reichler repeated her complaints regarding Mr. Morani to Mr. Murthy. Ms. Reichler informed Mr. Murthy of Mr. Morani's behavior and the hostile work environment such behavior created.

55. Ms. Reichler requested Mr. Murthy to investigate her complaint on behalf of herself and other female employees and recommend corrective action for

---

boy leads it's expected, we applaud him. But when girls lead, we call them bossy, we tell them not to, we tell them to put down their hands. We do this in very explicit ways and implicit ways. *See also The Wall Street Journal Editorial on "'Bossy,' the Other B-Word."*
*https://www.wsj.com/articles/SB10001424052702304360704579419150649284412*
Last visited February 25, 2021.

9

improvement.

56. Mr. Murthy informed Ms. Reichler that he would "look into" the situation.

**Reichler Immediately Retaliated Against for Legitimate Complaints**

57. Upon information and belief, no legitimate investigation ensued and Ms. Reichler was immediately retaliated against for her complaints.

58. On the same date that Ms. Reichler repeated her complaints regarding Mr. Morani to Mr. Murthy, February 18, 2020, Mr. Morani demanded that Ms. Reichler return her master key to her office building. She was provided with an alternative key that only opened the first floor exterior and her office door. Mr. Morani provided no explanation for this exchange but, upon information and belief, it was in blatant retaliation for Ms. Reichler's complaints.

59. A mere three days later, on or around February 21, 2020, Mr. Morani took Ms. Reichler into a conference room and quite literally threw a termination from employment letter at her, citing errors and overpayments to the Town's employee health plan coverage, all of which were factually inaccurate.

60. Mr. Morani demanded Ms. Reichler's laptop, cell phone and passwords.

61. Ms. Reichler was then escorted out of the building by the Chief of Police, which was deeply humiliating.

62. Upon information and belief, Ms. Reichler's termination was in direct retaliation for her legitimate complaints of discrimination and retaliation related to Mr. Morani by Mr. Bell and Mr. Murthy.

63. Ms. Reichler was treated differently when being terminated as, upon information and belief, Mr. Morani and the Town permitted multiple male employees to resign in lieu of termination in 2019 and 2020, but Ms. Reichler was not given that option.

Similarly, Mr. Morani made a special effort not to contest VEC applications for unemployment for previously terminated male employees but he vehemently contested Ms. Reichler's VEC application. Also, previously terminated male employees were given special treatment by retaining their health insurance for an additional month but Mr. Morani denied Ms. Reichler's request related to the same issue.

64. Notably, Ms. Reichler sent a third complaint in writing, on or around February 22, 2020, to the Abingdon Town Council, detailing much of the above and to support her female colleagues who remained employed. Upon information and belief, Ms. Reichler was retaliated against even further for this protected activity as Mr. Morani and others in the Town of Abingdon took great pains to prevent her from obtaining new employment in her field and regularly gave her a poor recommendation when potential new employers contacted them.

65. Ms. Duehring, another complainant, was terminated from employment on or around September 9, 2020, upon information and belief, related to her prior and continued legitimate complaints.

66. The Town of Abingdon had knowledge of, participated in, and permitted, a culture of discrimination, harassment, retaliation, and hostile work environment to exist against Ms. Reichler, and other women, on the basis of Ms. Reichler's gender, female, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. and participated in, and permitted, a culture of discrimination and retaliation.

**COUNT I: CLAIM OF SEX-BASED HARASSMENT/
HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

67. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

11

68. Plaintiff is female and is protected by Title VII from harassment and a work environment that is both hostile and accepting of sex-based harassment.

69. During her employment with Defendant, Plaintiff personally was subjected to unwelcome behavior based upon her sex that was sufficiently severe and pervasive such that it altered the conditions of her employment, created an abusive atmosphere, and unreasonably interfered with Plaintiff's work performance.

70. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with discrimination and hostile to Plaintiff and other female employees.

71. Defendant violated federal law by creating and permitting a work environment to exist that was discriminatory, hostile, and offensive to Plaintiff and other females, and by terminating Plaintiff's employment.

72. At all times relevant, Defendant retained substantial control over the context in which the discriminatory conduct and harassment occurred and had actual knowledge of Plaintiff's supervisor's hostile and harassing behavior.

73. The conduct previously detailed was unwelcome, humiliating, unlawful, and based on Plaintiff's sex, as evinced by the poor treatment and harassment Plaintiff encountered during her employment with Defendant.

74. But-for Plaintiff's sex, she would not have been the victim of discrimination.

75. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

76. At all times material hereto, Defendant engaged in a practice or practices supporting a hostile work environment with malice or reckless indifference to the

federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

77. The above-described acts by Defendant and employees of Defendant constitute sex-based harassment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

78. Plaintiff is entitled to all reasonable costs, including attorneys' fees associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

**COUNT II: CLAIM FOR SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

79. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

80. Plaintiff is a female and is protected from sex discrimination by Title VII.

81. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with discrimination, and hostile to Plaintiff and other female employees.

82. Defendant violated federal law by creating and permitting a work environment to exist that was discriminatory to Plaintiff and other female employees, and by wrongfully terminating Plaintiff's employment.

83. Specifically, Defendant discriminated against Plaintiff by treating her differently from, and less favorably than, similarly situated male employees, subjecting her to other differential treatment on the basis of her sex, and terminating Plaintiff's employment, all in violation of Title VII.

84. Defendant would not have terminated Plaintiff's employment, nor taken the other discriminatory actions against her, but for Plaintiff's sex. Alternatively, Plaintiff's sex was a motivating factor in Defendant's actions.

85. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

86. Prior to Plaintiff's termination from employment, Plaintiff was performing her work at a satisfactory level and meeting or exceeding Defendant's legitimate business expectations.

87. At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

88. Any reasons cited by Defendant for Plaintiff's termination were pretextual as Plaintiff's work performance was meeting legitimate business expectations.

89. The above-described acts by Defendant and employees of Defendant constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII").

90. Plaintiff is entitled to all reasonable costs, including attorneys' fees associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

**COUNT III: CLAIM FOR RETALIATON IN VIOLATION OF TITLE VII**

91. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

92. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with sex discrimination and hostile to Ms. Reichler and other females.

93. Ms. Reichler was subjected to systemic discrimination based upon sex, a hostile work environment, and retaliation for raising concerns about a work environment rife with sex discrimination and harassment.

94. Ms. Reichler witnessed male employees being treated differently from, and better than female employees, including herself. Such disparate treatment included hostile superiors, exclusion, work conditions, demotions, unwarranted targeting, contrasting disciplinary standards, and retaliation for making legitimate complaints. Moreover, Ms. Reichler was retaliated against after her employment ended, as the Town took great pains to prevent her from obtaining new employment.

95. Ms. Reichler observed that she was subjected to discriminatory treatment and harassment that male employees did not experience. Not only was this treatment discriminatory but it was so severe and pervasive as to alter the conditions of Ms. Reichler's employment and create a hostile or abusive working environment.

96. Ms. Reichler engaged in the protected activity of complaining about this discriminatory and hostile work environment on a myriad of occasions.

97. In direct retaliation for these complaints, Ms. Reichler has suffered instances of retaliation, including but not limited to, further disparate treatment, demotion, termination from employment, and attempts to prohibit Ms. Reichler from obtaining future employment.

98. The above-referenced employees were acting in the course and scope of their employment with Defendant at the time of their actions, therefore, Defendant is

liable for their actions under the doctrine of *respondeat superior*. Their actions against Ms. Reichler were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

99.  As a direct and proximate result of Defendant's actions, Ms. Reichler suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

100.  At all times relevant, Ms. Reichler performed her work at a satisfactory level, meeting or exceeding Defendant's legitimate business expectations.

101.  At all times material hereto, Defendant engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Reichler so as to support an award of punitive damages.

102.  The above-described acts by Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

103.  Ms. Reichler is entitled to all reasonable costs, including attorneys' fees associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff Stacey Lynn Reichler prays for judgment against Defendant, The Town of Abingdon, and for lost wages and benefits, equitable relief, back pay, front pay, compensatory, punitive damages, together with prejudgment interest from the date Ms. Reichler was demoted as detailed in the complaint and/or Ms. Reichler's termination from employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

*Trial by jury is demanded on all issues on which Plaintiff is entitled to a trial by jury.*

Respectfully Submitted,

**STACEY LYNN REICHLER**

   /s/ N. Winston West, IV
Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB # 65766)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 27th day of May, 2022, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Ramesh Murthy, Esquire
Cameron S. Bell, Esquire
PENN, STUART & ESKRIDGE
P.O. Box 2288
Abingdon, VA 24212
Tel: (276) 628-5151
Fax: (276) 628-5621
rmurthy@pennstuart.com
cbell@pennstuart.com

*Counsel for Defendant*

<u>/s/ N. Winston West, IV</u>