# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **STACEY LYNN REICHLER,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:21CV70637 |
| ) | |
| ) | **AMENDED** |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **THE TOWN OF ABINGDON,** ) | JUDGE JAMES P. JONES |
| ) | |
| ) | |
| Defendant. ) | |

*Thomas E. Strelka, L. Leigh R. Strelka, N. Winston West, IV, Brittany M. Haddox, and Monica L. Mroz,* STRELKA EMPLOYMENT LAW, *Roanoke, Virginia, for Plaintiff; Ramesh Murthy and Cameron S. Bell,* PENN STUART & ESKRIDGE, *Abingdon, Virginia, for Defendant.*

In this employment discrimination case, the plaintiff asserts claims against her former employer pursuant to Title VII of the Civil Rights Act of 1964, alleging hostile work environment, sex discrimination, and wrongful retaliation. The defendant has moved to dismiss the Complaint for failure to adequately allege facts supporting such claims. Because I find that the plaintiff has failed to allege that she has satisfied the administrative exhaustion requirement, I will grant the defendant's Motion to Dismiss with leave to amend.

I.

The Complaint alleges the following facts. The plaintiff, Stacey Lynn Reichler, served as the Director of Human Resources for the Town of Abingdon,

Virginia (Town).  She asserts that she was terminated on February 21, 2020, three days after meeting with counsel for the Town to report allegations of sex-based harassment and hostile work environment against the then-Town Manager.

Reichler alleges that she performed her job duties well and received positive performance evaluations.  Nevertheless, she claims that the Town Manager targeted her and that he treated her differently than male employees.  For instance, in October 2019, he denied her request for tuition reimbursement, despite her belief that the Town provided male police officers with this benefit.  That same month, the Town Manger forbade her from using Town vehicles after she borrowed a vehicle to visit another Town employee at the hospital while her car was in the shop, despite the fact that male Town employees were permitted to use the vehicles.  She was also reprimanded after an approved request for leave to attend her son's graduation from a military officer training program after he discovered that she did not actually attend the event because her son had sustained an injury.  Following these incidents, she claims that the Town Manager "began digging into [her] personal life and monitoring her social media."  Compl. ¶ 17, ECF No. 1-1.  He "installed a camera and microphone" outside her office "for no other reason but to spy on" her.  *Id.* ¶ 18.

On January 9, 2020, the Town Manager demoted Reichler from her role as a department head, and a little over a month later, she was fired.  She contends that three other female department heads were similarly demoted or terminated around

this time. On January 27, 2020, the Town Manager summoned Reichler to his office for a meeting, where he berated her about "her spending on previous business trips" and "her time off request regarding her son's graduation." *Id.* ¶ 27. He called her a liar, and said, "nobody likes you, nobody trusts you, and I have serious trust issues with you!" *Id.* ¶ 28. He called her "incompetent" and claimed that she didn't "know how to budget." *Id.* ¶ 29. She received a written disciplinary report after the meeting.

In addition, Reichler claims that the Town Manager made demeaning and condescending comments towards her and about women in the workplace. He referred to female employees as "busy bodies, bossy, catty, liars," and said that he "[didn't] like working with women because they're catty." *Id.* ¶ 46. During a staff meeting on January 23, 2020, he told the Town's female Director of Tourism, to "[s]hut up" and called her ideas "stupid." *Id.* ¶ 42. He told Reichler and another female employee, that "you all . . . are going to have to get used to not being treated the same" because he "need[ed] to focus on retaining employees who matter — IT and the Police." *Id.* ¶ 44. Reichler interpreted this comment to mean that he valued employees in departments that were predominately male. He further told female staff and female Town Council members that he "[knew] how to handle [them]." *Id.* ¶ 45. On February 23, 2020, the Town's female Special Events Coordinator, met with Reichler and told her that during a meeting earlier that month, the Town

Manager responded to her comment that the meeting was getting off-track by saying, "Man, you're really bossy." *Id.* ¶ 49.

Reichler, in her capacity as HR manager, reached out to one of the Town's attorneys to report the Town Manager's misconduct on behalf of herself and others. Another of the Town's attorneys met with Reichler on February 18, 2020, where she informed him about the Town Manager's behavior and requested that he investigate the allegations. The attorney told Reichler that he would "look into the situation." *Id.* ¶ 55. That same day, the Town Manager requested that Reichler return her master key for the office building, and she was provided a new key that granted her access only to the first floor and her office. On February 21, 2020, the Town Manager terminated Reichler, explaining the decision was based on "errors and overpayments to the Town's employee health plan coverage." *Id.* ¶ 58. She was immediately escorted out of the building by the Chief of Police. She was not permitted to resign from her position, as she contends the Town allowed for terminated male employees. The Town Manager also contested her request for unemployment benefits from the Virginia Employment Commission and denied her request to keep her health insurance for an additional month.

On February 22, 2020, Reichler sent the Town Council a letter that reiterated her complaints about the Town Manager. She also claimed that "[he] and others in the Town of Abingdon took great pains to prevent her from obtaining new

employment" and "gave her a poor recommendation when potential new employers contacted them." *Id.* ¶ 63.

On June 11, 2020, Reichler filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  She received a right-to-sue letter dated January 6, 2021.  She then received a second notice, dated January 7, 2021, advising that the EEOC was rescinding the prior right-to-sue letter, explaining that it "was issued in error and is invalid" and that the EEOC was forwarding her charge to the U.S. Department of Justice (DOJ).  *Id.* Ex. B, at 22.

On April 5, 2021, prior to receiving any notice from the DOJ, Reichler filed suit against the Town in state court in Roanoke, Virginia, "out of an abundance of caution," to preserve the timeliness of her lawsuit.  *Id.* ¶ 3.  Her Complaint asserts three claims: hostile work environment (Count 1); sex discrimination (Count 2); and retaliation (Count 3).  After being served with the Complaint, the Town removed the case to the Roanoke division of this court, pursuant to 28 U.S.C. § 1441.  On December 20, 2021, the Town moved to transfer the case to the Abingdon division pursuant to 28 U.S.C. § 1404, and to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  The court

---

[1] The plaintiff asserts that the Town "filed its motion pursuant to Rule 12(c) of the Federal Rules." Pl.'s Br. Opp'n 1, ECF No. 11. However, the Town's motion expressly relies on Rule 12(b)(6). Mot. Dismiss 1, ECF No. 4.

granted the Town's request to transfer the case to the Abingdon division on January 5, 2022.

In support of its Motion to Dismiss, the Town argues first that the plaintiff failed to exhaust her administrative remedies, as the EEOC rescinded her right-to-sue letter and made clear that the earlier notice was invalid, and secondly, that she has not alleged sufficient facts to make her claims plausible.

In response, Reichler contends that she has adequately plead facts to support her three causes of action. She concedes that she did not allege exhaustion in her Complaint but argues that the DOJ ultimately issued her a right-to-sue letter, dated November 17, 2021, mooting the exhaustion issue. She attached a copy of the letter with her brief. Pl.'s Br. Opp'n Ex. C, Notice of Right to Sue, ECF No. 11-3. The plaintiff also points out that she did not serve this lawsuit on the defendant until after the DOJ issued the notice. The Town maintains that despite this new evidence, a plaintiff must allege exhaustion in the complaint to survive a motion to dismiss. The parties have fully briefed the issues and the matter is now ripe for decision.[2]

## II.

As a threshold matter, I must address the administrative exhaustion issue. Before suing under Title VII, a plaintiff is required to file a charge of discrimination

---

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

with the EEOC and to exhaust the administrative procedures under 42 U.S.C. § 2000e-5, including obtaining a notice of right to sue. The exhaustion requirement is not a "a formality to be rushed through," but is "an integral part of the Title VII enforcement scheme." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). In this case, because the plaintiff is suing a government entity, the EEOC must refer the matter to the Attorney General of the United States to issue the notice of rights. 29 C.F.R. § 1601.28(d)(2); *Fells v. Va. Dep't of Transp.*, No. 2:08CV74, 2008 WL 11512344, at *2 (E.D. Va. Oct. 28, 2008).

The Town argues that because Reichler failed to allege in the Complaint that she exhausted her administrative remedies, the Motion to Dismiss must be granted. The Town relies on cases from this circuit that have recognized the "right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995); *see also Landry v. SAIC*, No. 1:12CV673 (JCC/TRJ), 2012 WL 2951639, at *3–4 (E.D. Va. July 19, 2012).³ And both parties rely on a district court case from this circuit, *Hardy v. Lewis Gale Medical Center*, 377 F. Supp. 3d 596 (W.D. Va. 2019), in support of their positions. The Town argues that *Hardy* establishes that the plaintiff may survive a failure-to-exhaust challenge where a right-to-sue letter was not initially

---

³ The Supreme Court subsequently held that Title VII's charge-filing requirement is a non-jurisdictional claim-processing rule, "albeit a mandatory one." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019).

included only if she subsequently amends her complaint. *Id.* at 606. Reichler has not moved to amend the Complaint to account for new facts raised for the first time in her brief — that the DOJ issued a right-to-sue letter. Def.'s Reply Mem. 2, ECF No. 14. She argues that *Hardy* only proves the mootness of the defendant's argument, as she ultimately did receive her notice of rights.

This issue could easily have been rectified if Reichler had amended her Complaint to add the DOJ notice after the Motion to Dismiss as permitted by Rule 15(a)(2)(B). Instead, she merely doubles-down on her position that exhaustion has, in fact, been satisfied. The issue then is whether the facts of this case allow for the consideration of the extrinsic evidence. I find that they do not.

Ordinarily, when resolving a Rule 12(b)(6) motion, the court "cannot consider matters outside the pleadings without converting the motion into one for summary judgment." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). But this general rule has several exceptions. The court may consider documents attached to the complaint, Fed. R. Civ. P. 10(c), as well as those attached to a motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin,* 471 F.3d 523, 526 n.1 (4th Cir.2006)). With regard to the latter, a document is "integral" if the plaintiff has "explicitly referred to" the document in the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

("The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint — lack of notice to the plaintiff — is dissipated [w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.") (internal quotation marks omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

This case presents an unusual application of this rule in that it is typically the defendant who is attempting to introduce the extrinsic evidence. Even still, I find the same analysis applies where it is the plaintiff who seeks to introduce the evidence, as the concerns about notice to the opposing party remain relevant.

It is undisputed that Reichler did not "explicitly refer[] to" the DOJ letter in the Complaint. *Am. Chiropractic Ass'n*, 367 F.3d at 234. Although she referenced two related documents — the EEOC right-to-sue letter, dated January 6, 2021, and the letter rescinding that notice dated January 7, 2021 — she did not rely upon the DOJ letter in the Complaint. To the contrary, the Complaint was crafted around the absence of the letter, as she made clear that she intentionally filed the lawsuit prematurely to preserve her rights. The fact that she waited to serve the defendant until after receipt of the letter does not change the analysis. While I understand the plaintiff's position that she was concerned about the timeliness of her lawsuit if the EEOC's rescission proved to be in error or did not toll the 90-day deadline for filing

after the issuance of notice, the federal rules and *Hardy* provide a clear solution: she may amend the Complaint.

In sum, because I may not consider the right-to-sue letter at this stage of the litigation, and the plaintiff did not allege in the Complaint that she exhausted her administrative remedies, I will grant the Town's motion, with leave to amend.[4]

III.

For the foregoing reasons, it is **ORDERED** as follows:

1. Defendant's Motion to Dismiss, ECF No. 4, is GRANTED; and

2. Plaintiff is granted leave to file an Amended Complaint within 14 days from the date of entry of this Opinion and Order.

ENTER: June 10, 2022

/s/ JAMES P. JONES
Senior United States District Judge

---

[4] Because of the mandatory nature of administrative exhaustion, I will not opine on the Town's argument that the Complaint fails to sufficiently allege facts supporting the claims of sex discrimination, hostile work environment, and retaliation. However, I would urge the Town to consider the viability of such an argument, assuming that an amended complaint is filed, in light of my recitation of the factual allegations made in the present Complaint.